UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ORESTE DORRIELAN,

Petitioner,

v. CASE NO. 6:03-cv-1709-Orl-19JGG

JAMES V. CROSBY, JR., et al.,

Respondents.

---

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1) alleging that he received ineffective assistance of counsel. Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a timely response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 12). Petitioner filed a reply to the response (Doc. No. 15). Respondents filed a Supplemental Response (Doc. No. 19) to the petition, and Petitioner filed a reply (Doc. No. 23) to the Supplemental Response.

***Procedural History***

Petitioner was charged by information with robbery with a firearm (count one); aggravated assault with a firearm (count two); shooting at, within, or into an occupied vehicle; burglary of a dwelling (count three); and resisting an officer without violence

(count four). After a jury trial, Petitioner was found guilty as charged in the information. He was then sentenced to concurrent terms of imprisonment as follows: a forty year term as to count one, a five year term as to count two, and fifteen year terms as to counts three and four. Petitioner filed a direct appeal, and the Florida Fifth District Court of Appeal *per curiam* affirmed his convictions and sentences. *Dorrielan v. State*, 782 So. 2d 400 (Fla. 5th DCA 2001).

Petitioner next filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction raising seven claims. Petitioner subsequently amended the motion to add an eighth claim. After the State responded to the motion, Petitioner filed another amendment adding a ninth claim. The trial court entered an order denying the first eight claims on the merits and denying the ninth claim as untimely and procedurally barred. Petitioner appealed the denial of the claims, and the appellate court *per curiam* affirmed the trial court's decision. *Dorrielan v. State*, 857 So. 2d 894 (Fla. 5th DCA 2003).

***Claims One Through Nine***

Petitioner argues that he received ineffective assistance of counsel because his counsel: (1) failed to request that his case be reopened to present the testimony of his co-defendant; (2) failed to present the pawn shop's surveillance tape at trial; (3) prevented Petitioner from testifying; (4) failed to impeach the testimony of Jason Schiraldi; (5) failed to impeach the testimony of the victim Ramon Torres; (6) failed to present evidence of the hand swab/paraffin test; (7) failed to move to suppress victim Idalmi Torres' unnecessarily suggestive in-court identification of Petitioner; (8) failed to move to strike two jurors who

stated that they could not be fair and impartial; and (9) failed to retain/introduce gun powder residue evidence to show that Petitioner did not fire a gun.

***A. Claims Six and Nine***

Petitioner concedes that claims six and nine are without merit; therefore, claims six and nine are **DENIED** as moot. *See* Doc. No. 15 at 18, 20.

***B. Claim One Through Five, Seven, and Eight***

In the present case, Petitioner raised claims one through five, seven, and eight in his Rule 3.850 motion, and the state trial court denied the claims. Petitioner appealed the state trial court's denial of his Rule 3.850 motion. The appellate court *per curiam* affirmed the denial.

*1. Applicability of 28 U.S.C. Section 2254(d)*

Section 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), *cert. denied*, 534 U.S. 1046 (2001),

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state courts applied federal law incorrectly, habeas corpus relief is appropriate only if that application was "objectively unreasonable." *Id*. Furthermore, a determination of a factual issue made by a state court shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See id*. at 835-36; 28 U.S.C. § 2254(e)(1).

*2. Governing Law*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90.[1] "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989).

In assessing Petitioner's ineffective assistance of counsel claims, the state trial court utilized the standard set forth in *Strickland*. (Appendix O at 2-3.) As noted by the Eleventh Circuit Court of Appeals, "[i]t is well established that the United States Supreme Court's decision in *Strickland* . . . is the 'controlling legal authority' to be applied to ineffective assistance of counsel claims." *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Thus, the state court correctly identified the governing legal principle.

*3. Claim One*

Petitioner contends that counsel failed to move to reopen the case to present the testimony of his co-defendant, Ernst Boutin. According to Petitioner, Mr. Boutin would have testified that he went to the pawn shop with Petitioner and two other men; that Petitioner was still in the pawn shop when the instant offenses were committed; and that the identity of the actual perpetrator was someone other than Petitioner. (Doc. No. 15 at 10.)

Petitioner was convicted of committing an armed robbery of a couple who had just exited a pawn shop. The evidence at trial was that Petitioner approached Ramon Torres, who was in the driver's seat of a green Ford Explorer, pointed a gun a Mr. Torres, and demanded money. Petitioner shot one of the back tires of the vehicle. Idalmi Torres, who was in the passenger seat, exited the vehicle, threw her purse, and started to run, yelling for help.

Jason Schiraldi approached Mrs. Torres to help her. Petitioner fired the gun again, grabbed the purse, and ran. Mrs. Torres got back in the car, and she and Mr. Torres followed Petitioner. A black Ford Mustang picked up Petitioner in the middle of the street, and Mr. and Mrs. Torres followed that car. During the chase, Mrs. Torres called the police and reported the license plate number of the car. Mr. and Mrs. Torres eventually lost sight of the Mustang.

Shortly after hearing a dispatch call concerning the incident, Detective Randall Root saw the Mustang and provided surveillance of the car. The car eventually stopped at an apartment complex, and the occupants were advised to lie on the ground. The driver, who was identified as co-defendant Ernst Boutin, was apprehended. However, Petitioner exited the passenger side of the car and proceeded to run through the apartment complex. Sergeant Hopkins followed and saw Petitioner enter an apartment. Petitioner was found hiding in a locked bathroom in the apartment.

Petitioner and Mr. Boutin were tried at the same time, but each was tried by a separate jury. After the state rested, defense counsel for Petitioner indicated that Petitioner would testify if Mr. Boutin was going to testify. Before deciding whether or not both juries should hear the testimony of the two defendants, the trial court decided to have each defendant proffer his testimony.

On proffer, Mr. Boutin testified that while driving to pick up his child at daycare, he saw Petitioner running in the street. He had known Petitioner for two weeks, and he stopped to pick him up. Petitioner indicated to Mr. Boutin that someone was chasing him

and had tried to rob him. Petitioner gave Mr. Boutin directions to the apartment. Mr. Boutin indicated that he was afraid of the gun that Petitioner had with him. Mr. Boutin testified that when the police approached his vehicle he did not run because he had not done anything wrong. (Appendix B at 293-98.)[2]

Petitioner's contention that Mr. Boutin would have testified that he went to the pawn shop with Petitioner, that Petitioner was in the pawn shop when the incident occurred, and that someone else committed the offenses is sheer speculation which contradicts the testimony offered by Mr. Boutin on proffer. Mr. Boutin testified that he merely picked up Petitioner and took him to an apartment. He denied that he saw anything else going on in the area at the time he picked up Petitioner. This Court agrees with the state court's conclusion that this claim is comprised of mere conclusory allegations. Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995).

*4. Claim Two*

Petitioner argues that counsel failed to present the pawn shop's surveillance videotape at trial. According to Petitioner, the videotape would have shown that he was inside the store at the time of the offenses.

The Court notes that there was no evidence at trial as to the exact time of the offenses. Even assuming that the videotape showed Petitioner in the store at a particular

---

[2]After the proffers, both defendants elected not to testify at trial. (Appendix B at 318-19.)

time, that alone would not proven his innocence, especially given the fact that both victims clearly identified Petitioner as the individual who robbed them.

Furthermore, one of the police detectives testified that he obtained the videotape from the pawn shop but that he could not see anything on tape. (Appendix B at 242.) A store employee testified that the video camera did not provide a view of the entire building; there were areas where a person could stand without been seen on the video. *Id*. at 229-30. During closing arguments, defense counsel argued that the best evidence of the crime would have been the videotape, but that the police failed to take adequate steps to try and review it. *Id*. at 351.

It is clear from the record that defense counsel was aware of the existence of the videotape but chose not to introduce it at trial. Based on his closing argument, this Court concludes that the decision was a strategic one which was neither unreasonable nor deficient. *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983), *cert. denied*, 464 U.S. 1063 (1984) (a tactical decision amounts to ineffective assistance of counsel "only if it was so patently unreasonable that no competent attorney would have chosen it"). Moreover, there is no indication that the content of the videotape would have any way aided Petitioner's defense. Therefore, Petitioner has not satisfied either prong of the *Strickland* analysis.

*5. Claim Three*

According to Petitioner, his attorney did not permit him to testify in his own defense. Petitioner has failed to allege specifically how his counsel prevented him from

testifying or whether his testimony would have rebutted the testimony of witnesses against him. Petitioner's unsupported and conclusory allegations are insufficient to sustain this issue. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105 (1992).

Furthermore, Petitioner has failed to allege facts tending to show that the outcome of the trial would have been different had he testified. Assuming that Petitioner's testimony would have been the same as his proffer, this Court agrees with the state court's conclusion that "[a] careful review of the proffer reveals no reasonable possibility that the jury would have found [Petitioner's] testimony more credible than that of the other witnesses." (Appendix O at 8.) Thus, the prejudice element of *Strickland* has not been met, and this claim must be denied. *See Alvord v. Wainwright*, 725 F.2d 1282, 1289-90 (11th Cir.) (holding that when no prejudice shown, there is no need to address a claim that counsel was deficient), *cert. denied*, 469 U.S. 956 (1984).

*6. Claim Four*

Petitioner contends that his counsel failed to impeach the testimony of Jason Schiraldi. According to Petitioner, Mr. Schiraldi's initial statement to the police indicated that he was "coming out of the Auto Zone store" when he witnessed the crime and that the vehicle he saw was a green Explorer. Petitioner states that Mr. Schiraldi testified at trial that he was "pulling into a parking lot with his company manager" at the time of the crime and that the color of the vehicle went from white to "lighter." Petitioner believes that counsel should have used these inconsistencies to impeach Mr. Schiraldi at trial.

It is clear from the record that Petitioner is confusing two separate witnesses: Jason Michael Schiraldi and James Jason Schlegel. Mr. Schiraldi's initial statement and his trial testimony both state that he was leaving the Auto Zone store when he saw the incident involving a green sports utility vehicle. (Appendix A at 7; Appendix B at 25-26.) On the other hand, Mr. Schlegel's trial testimony indicated that he and his manager were pulling into a parking lot when he noticed a black Mustang parked in the road. (Appendix B at 202.) Mr. Schlegel did not get a good look at the person in the car, and he later saw the car chased by a "white" or "light" colored sport utility vehicle. *Id*. at 204-05, 207.

It is clear from the record that the discrepancies cited by Petitioner did not constitute fertile ground for impeaching Mr. Schiraldi. Petitioner has confused the testimony of the two witnesses who have similar names. Counsel was not deficient regarding this matter, and Petitioner has not demonstrated prejudice.

*7. Claim Five*

Petitioner avers that counsel failed to impeach the testimony of Ramon Torres. In his initial statement to police, Mr. Torres indicated that the perpetrator wore a light blue shirt and light blue shorts. However, at trial he testified that the culprit wore long pants.

The Court notes that this discrepancy was explored at length by defense counsel during cross-examination of Mr. Torres.[3] (Appendix B at 267-69.) In addition, defense

[3]In fact, the trial judge even told defense counsel "let's not beat this to death. We've been over it three times now." (Appendix B at 269.)

counsel reiterated the discrepancy during his closing argument. *Id*. at 361. Clearly, defense counsel performed reasonably regarding this matter, and Petitioner suffered no prejudice.

*8. Claim Seven*

According to Petitioner, defense counsel should have moved to suppress victim Idalmi Torres' unnecessarily suggestive in-court identification of Petitioner.[4] Petitioner contends that Mrs. Torres' in-court identification of Petitioner was tainted by the fact that she observed him at four separate pre-trial conferences.

Petitioner's contention fails to consider the fact that both Mr. and Mrs. Torres identified Petitioner as the perpetrator shortly after he was apprehended. (Appendix B at 65-66, 247-48, 279.) Furthermore, Petitioner has provided no factual basis for his allegation that Mrs. Torres' identification was unnecessarily suggestive. As noted by the trial court, "the overwhelming weight of the evidence at trial was against [Petitioner]." (Appendix O at 12.) Petitioner has not satisfied either element of *Strickland*, and this claim must be denied.

*9. Claim Eight*

Petitioner contends that counsel failed to strike two jurors who stated that they could not be fair and impartial. Petitioner has not identified the particular jurors or even alleged that they were actually seated on his jury.

Petitioner's allegations regarding this claim are vague, conclusory, and inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See United*

---

[4]Idalmi Torres was the wife of Ramon Torres.

*States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993), *aff'd without opinion*, 23 F.3d 410 (7th Cir. 1994), *cert. denied*, 513 U.S. 953 (1994). Petitioner "must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *See United States v. Moya-Gomez*, 860 F.2d 706, 764 (7th Cir. 1988), *cert. denied*, 492 U.S. 908 (1989); *Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.) In the present case, Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v*, 875 F. Supp. at 237. This claim must fail.

*10. Conclusion*

In the present case, the Court finds that, with regard to claims one through five, seven, and eight, trial counsel's conduct was reasonable and/or Petitioner has not shown prejudice. Certainly, Petitioner has not demonstrated, and this Court is unable to conclude, that the state court's decision was either "contrary to" or an "unreasonable application of" *Strickland*. Moreover, Petitioner has not demonstrated that the state court made an unreasonable determination of the facts in light of the evidence presented. Claims one through five, seven, and eight must be denied pursuant to section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Oreste Dorrielan is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this _7th__ day of December, 2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies to:
sa 12/7
Counsel of Record
Oreste Dorrielan